PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Huff, Judges Humphreys, Petty, Beales, Alston, McCullough,[*] Chafin,
          Decker, O'Brien, Russell and AtLee
Argued at Richmond, Virginia


ANGELA MAYE HOLT

                                                            OPINION BY
v.      Record No. 1252-14-1                        JUDGE TERESA M. CHAFIN
                                                            APRIL 12, 2016

COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

      J. Barry McCracken, Assistant Public Defender (Office of the Public
      Defender, on brief), for appellant.

      Elizabeth C. Kiernan, Assistant Attorney General (Mark R.
      Herring, Attorney General, on brief), for appellee.


      At the conclusion of a jury trial, Angela Maye Holt was convicted of obtaining money by

false pretenses in violation of Code § 18.2-178 and embezzlement in violation of Code

§ 18.2-111.  She appealed both convictions.  On appeal, Holt argued that the evidence failed to

establish that she obtained money by false pretenses because it did not prove:  1) that she

intended to defraud the victim, or 2) that she made a false representation to him of any past or

existing fact.  While Holt acknowledged that she failed to make any argument at trial concerning

the lack of proof of any false representation, she requested this Court to review the issue under

the ends of justice exception to Rule 5A:18.  Additionally, Holt argued that the evidence was

_____

      [*] Justice McCullough participated in the decision of this case prior to his investiture as a
Justice of the Supreme Court of Virginia.

insufficient to support her conviction of embezzlement because it failed to prove that she was entrusted with the property at issue.

A panel of this Court unanimously reversed Holt's embezzlement conviction and dismissed the indictment charging her with that offense. Holt v. Commonwealth, No. 1252-14-1, 2015 Va. App. LEXIS 238 (Va. Ct. App. Aug. 4, 2015). The panel was divided, however, on whether the ends of justice exception to Rule 5A:18 should have applied to her argument concerning the Commonwealth's failure to prove any false representation. Id. The panel majority held that the exception did not apply under the facts and circumstances of the case and affirmed her obtaining money by false pretenses conviction. Id. The dissenting judge would have applied the ends of justice exception and reversed Holt's conviction. Id.

Holt petitioned this Court for a rehearing *en banc* regarding her false pretenses conviction, only requesting a review of the applicability of the ends of justice exception to her case and the sufficiency of the evidence establishing that she made a false representation of a past or existing fact. The Commonwealth did not file a petition requesting a rehearing *en banc* concerning Holt's embezzlement conviction. We granted Holt's petition for rehearing regarding the issues she presented therein, stayed the mandate of the panel decision, and reinstated the appeal on the docket of this Court. Upon rehearing the relevant issues *en banc*, we hold that the ends of justice exception does not apply to Holt's case and affirm her conviction for obtaining money by false pretenses in violation of Code § 18.2-178.

I. BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v.

_Commonwealth_, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence relevant to the issues addressed on rehearing *en banc* is as follows.

Holt and Anthony Banks, the victim in the present case, began dating in 2012. When the relationship began, Banks was only seventeen years old. Holt was twenty-nine years old at that time. In the spring of 2013, Banks agreed to purchase Holt's Chevrolet Suburban to help her make child support payments. Banks began making periodic payments to Holt for the purchase of the vehicle in March 2013. He made a payment to Holt each time he received a paycheck. Often, Banks would give his entire paycheck to Holt to cover the couple's living expenses as well as his vehicle payment.

Over the course of approximately five months, Banks paid Holt $900 for the Suburban, and Holt signed the title of the vehicle over to him on July 29, 2013. With Holt's permission, Banks chose not to register the transaction with the Department of Motor Vehicles ("DMV") because it was cheaper for him to keep the vehicle on Holt's automobile insurance policy rather than transfer it to one of his own. Although both parties occasionally drove the Suburban before July 29, 2013, Banks testified that he had physical possession of the vehicle after that date.

On July 16, 2013, Aaron Smalley, Holt's former boyfriend and the father of her children, was released from incarceration, and he and Holt quickly resumed their romantic relationship. When Smalley came to Holt's mother's house to pick up his children on August 2, 2013, Smalley and Banks had an argument that eventually developed into a physical altercation. When Banks called the police, Smalley got into the Suburban and drove away.

Following the altercation, Banks decided to record his title to the Suburban with the DMV in order to regain possession of the vehicle. When he arrived at the DMV three days later, he learned that Holt had obtained a replacement title to the vehicle on August 3, 2013, the day following the altercation, by claiming that the original title to the vehicle had been lost or stolen.

- 3 -

Holt's replacement title rendered Banks's original title invalid, and neither the Suburban nor the $900 that Banks paid to Holt were ever returned to him. Holt married Smalley approximately four months later in December 2013.

At trial, neither Banks nor Holt testified about any specific statements that Holt made to induce Banks to purchase the vehicle. Banks explained that he needed a vehicle to drive to work and that he agreed to buy Holt's Suburban to help her make payments on her child support obligations. Holt denied that she ever sold the vehicle to Banks, denied that he paid her money for the vehicle, and claimed that she signed the title so that a third party could purchase the vehicle from her.

In closing argument, the Commonwealth acknowledged that it had to prove that Holt made a false representation of a past or existing fact that induced Banks to purchase the Suburban in order to prove that Holt obtained money by false pretenses. The Commonwealth then argued that Holt had falsely represented "that she would give over the car to Mr. Banks at the end of the transaction."[1] Holt did not argue that such a representation referenced a future event rather than a past or existing fact,[2] and the jury convicted Holt of obtaining money by false pretenses in violation of Code § 18.2-178.

---

[1] Despite the Commonwealth's erroneous position at trial, we note that an appellate court's examination "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008). Furthermore, we note that neither the Commonwealth nor this Court is bound by the prosecutor's statements in closing argument. See Calloway v. Commonwealth, 62 Va. App. 253, 259, 746 S.E.2d 72, 75 (2013) ("Furthermore, '[the Attorney General] may not be estopped from repudiating the earlier position erroneously taken by the Commonwealth's Attorney, nor may the [Commonwealth] be estopped from changing [its] position.'" (quoting In re Dep't of Corr., 222 Va. 454, 465, 281 S.E.2d 857, 863 (1981) (alterations in original))).

[2] Holt's closing argument, as well as the arguments she presented in her motions to strike, focused on her lack of fraudulent intent and Banks's failure to entrust her with the Suburban at the time of the alleged embezzlement. She never argued that the Commonwealth failed to prove that she made a false representation of a past or existing fact.

II.  ANALYSIS

On rehearing *en banc*, we must determine whether the ends of justice exception to Rule 5A:18 allows us to address the merits of Holt's sufficiency argument under the facts and circumstances of this case.  As a preliminary matter, however, we first address certain procedural issues related to *en banc* review by this Court.

A.  *EN BANC* REVIEW

In Ferguson v. Commonwealth, 51 Va. App. 427, 433, 658 S.E.2d 692, 695 (2008) (quoting Glenn v. Commonwealth, 49 Va. App. 413, 423 n.3, 642 S.E.2d 282, 287 n.3 (2007) (*en banc*)), this Court held that the "'grant of *en banc* review vacates the prior panel opinion *in toto* . . . [,]'", and voids "the decision of the panel as to the issues before this Court *en banc*."  Furthermore, this Court explained that "we do not address *en banc* the issues raised in [an] appellant's panel opening brief [that are] not subject to [his or her] petition for rehearing *en banc*," and concluded that when issues are addressed by a panel opinion but are not included in an appellant's petition for rehearing *en banc*, "we reinstate the panel opinion on the issues not before us."  Id.

Portions of Ferguson are inconsistent with Rule 5A:35, the rule setting forth the procedure for *en banc* review.[3]  Subsection (b) of that rule states:

> When all or part of a petition for rehearing *en banc* is granted, the clerk of this Court shall notify all counsel promptly.  *The mandate entered is stayed as to all issues decided by the panel pending the decision of the Court en banc.*  The appeal is reinstated on the docket of the Court for oral argument only as to issues granted.

Rule 5A:35(b) (emphasis added).  Subpart (1) of the same subsection, entitled "Issues Considered Upon Rehearing *En Banc*," states:

---

[3] Rule 5A:35 was substantially amended in 2010, two years after the decision in Ferguson, to include the language quoted in this opinion.

> Only issues raised in the petition for rehearing *en banc* and granted for rehearing or included in the grant by the Court on its own motion are available for briefing, argument, and review by the *en banc* Court. The Court may grant a petition in whole or in part. Any issue decided by a panel of this Court not subject to a petition for rehearing *en banc* remains undisturbed by an *en banc* decision.

Rule 5A:35(b)(1).

While Ferguson and Rule 5A:35 are consistent concerning the scope of the issues considered by this Court on *en banc* review, they differ concerning the effect of granting an appellant's petition for rehearing *en banc*. Ferguson expressly held that a panel decision is vacated by the grant of *en banc* review, whereas Rule 5A:35 states that the mandate of the panel is stayed by such a grant.

To clarify this inconsistency, we hold that the grant of *en banc* review stays a panel decision pending review of those issues for which rehearing *en banc* has been granted but does not vacate it, and we overrule Ferguson to the extent it holds otherwise.[4] Applying this holding and Rule 5A:35 to the case at hand, we address only the issues raised in Holt's petition for rehearing *en banc* and reinstate the panel's decisions regarding the issues not before this Court for *en banc* review (i.e., the decision concerning Holt's intent to defraud Banks set forth in Part II(A)(1) of the panel opinion and the reversal of her embezzlement conviction set forth in Part II(B) of the panel opinion).

## B. APPLICATION OF THE ENDS OF JUSTICE EXCEPTION

Code § 18.2-178(A) provides, in pertinent part, that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other

---

[4] We also reverse Glenn, 49 Va. App. at 423 n.3, 642 S.E.2d at 287 n.3, to the extent it holds that a panel opinion is vacated rather than stayed upon the grant of *en banc* review.

property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ."

To sustain a conviction for larceny by false pretenses,

> the Commonwealth must prove: "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)); see also Austin v. Commonwealth, 60 Va. App. 60, 66, 723 S.E.2d 633, 636 (2012).

> A criminal false pretense has been defined as follows:
>
> "[T]he false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation. According to the definition, the false pretense must be a representation as to an existing fact or past event. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property. But if false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property."

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

Holt argues that the Commonwealth failed to prove that she made a false representation of an existing fact or past event that induced Banks to part with the $900 he paid for the Suburban. Holt contends that even if she falsely represented that she would sell the Suburban to Banks, such a representation constituted a promise or a reference to a future event, and therefore, was insufficient to support her conviction. While Holt concedes that she did not present this

- 7 -

argument to the trial court, she requests that we consider this issue under the "ends of justice" exception to Rule 5A:18.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The ends of justice exception is narrow and is to be used sparingly," and applies only in the extraordinary situation where a miscarriage of justice has occurred. Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)); see also Gheorghiu v. Commonwealth, 280 Va. 678, 689, 701 S.E.2d 407, 413-14 (2010) (explaining that the ends of justice exception applies in limited circumstances to correct grave injustice). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Redman, 25 Va. App. at 221-22, 487 S.E.2d at 273.

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." Brittle v. Commonwealth, 54 Va. App. 505, 514, 680 S.E.2d 335, 340 (2009). "[W]hen an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." Id. "[A]n appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." Redman, 25 Va. App. at 221, 487 S.E.2d at 272 (emphasis in original). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (emphasis in original). "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the

evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'"[5] Flanagan v. Commonwealth, 58 Va. App. 681, 695, 714 S.E.2d 212, 218 (2011) (quoting Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005)).

Holt's appellate argument misses "the distinction between lack of proof of an element and affirmative proof that the element did not occur." Phan Le v. Commonwealth, 65 Va. App. 66, 75, 774 S.E.2d 475, 479 (2015). "[L]ack of proof is not affirmative evidence to the contrary, which would warrant exercising the 'ends of justice' exception to Rule 5A:18." Id. at 75-76, 774 S.E.2d at 480.

While the Commonwealth may have failed to prove a specific representation made by Holt referencing an existing fact or past event, the record does not affirmatively prove that Holt failed to make such a representation. Although Holt's promise to deliver the Suburban to Banks after he paid the full purchase price for the vehicle referred to a future event, her promise regarding future action does not preclude the existence of another falsely represented past or existing fact. At best, the Commonwealth's failure to present additional evidence concerning the specific false pretenses that Holt used to defraud Banks only demonstrates that a miscarriage of justice *may* have occurred, not that a miscarriage of justice *did* occur. See Redman, 25 Va. App. at 223, 487 S.E.2d at 273.

As Banks and Holt were involved in a romantic relationship and they lived together, Holt had ample opportunity to falsely represent specific existing facts about the Suburban to Banks during the time that he made payments for the vehicle. Furthermore, the evidence presented in

---

[5] While we have also applied the ends of justice exception in cases in which juries were not properly instructed on the elements of the charged offense, see, e.g., Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991), the trial court properly instructed the jury on the elements of the offenses charged in the present case.

this case implied that Holt intended to take advantage of Banks. When Holt and Banks began their romantic relationship, Holt was more than ten years older than Banks and he was a minor. When Smalley was released from incarceration, Holt quickly rekindled her romantic relationship with him and they were married within months. Although she signed the title of the Suburban over to Banks, Holt regained both possession of and title to the vehicle within days of doing so. Based on these circumstances, the jury could have reasonably inferred that Holt's relationship was a pretext on her part that allowed her to take advantage of Banks's relative youth and inexperience to obtain financial support from him. The same inference also implied that Holt was likely to relate false statements to Banks to encourage him to purchase the Suburban.

Moreover, the record in this case actually implies that Holt made a false representation concerning an existing fact. She represented that the Suburban was actually for sale at the time when she persuaded Banks to purchase the vehicle and make payments to her for that purpose. Thus, Holt falsely represented a fact about the present status of the vehicle at that time. Although Holt promised that she would sell the Suburban to Banks in the future when he had completed all of his installment payments and paid her the full purchase price of the vehicle, Banks had to rely to some degree on Holt's representation that the Suburban was actually for sale at the time when he agreed to purchase it and each time that he made payments for the vehicle.

In short, Holt's argument assumes that she did not make any other representations to Banks about the Suburban beyond her promise to transfer ownership of the vehicle to him at a later date. This assumption is not affirmatively supported by the record. Banks did not testify about the specific representations that Holt made to him that convinced him to buy the Suburban, and Holt denied that the transaction occurred. As such, the record fails to affirmatively establish that Holt did not make additional false statements and, by doing so, commit a criminal offense.

- 10 -

Based on these circumstances, we cannot conclude that a clear injustice has occurred that would warrant the application of the ends of justice exception to Rule 5A:18.

In the present case, the record simply does not contain affirmative evidence establishing Holt's innocence or the lack of a criminal offense. Accordingly, we decline to apply the ends of justice exception to Rule 5A:18 to her argument, and therefore, do not consider her argument that the evidence was insufficient to prove that she used false pretenses to perpetrate the fraud at issue in this case.

### III. CONCLUSION

For the reasons previously stated, we conclude that the ends of justice exception to Rule 5A:18 does not apply under the facts and circumstances of this case. Therefore, we do not address the substance of Holt's appellate argument and affirm her conviction.

<u>Affirmed.</u>

Petty, J., with whom Humphreys and O'Brien, JJ., join, concurring, in part, and dissenting, in part.

> The multiple protections which surround an accused in our criminal justice system are often mystifying to observers trained in other disciplines. We justify them by our overriding concern that no innocent person will be convicted in error. . . . Abhorrence of conviction of the innocent is not only the bedrock upon which our criminal justice system rests, it is also fundamental to the public perception of its fairness. Justice must not only be done; it must be seen to be done. A system which is perceived to be tolerant of the danger that an innocent person has been convicted, in order to punish him for some other act of which he is suspect, will forfeit public confidence.

Odum v. Commonwealth, 225 Va. 123, 135-36, 301 S.E.2d 145, 152 (1983) (Russell, J., dissenting).

I believe that Justice Russell's prudent concern for the integrity of our judicial system reflects the prism through which this case must be viewed. It is without question the Commonwealth failed to prove that Angela Maye Holt was guilty of the crime the Commonwealth accused her of committing.[6] However, rather than address the merits of Holt's argument, the majority strictly applies Rule 5A:18 and allows the conviction to stand simply because her attorney failed to make the proper argument to the trial court. Because I believe that affirming such a conviction constitutes a miscarriage of justice in light of the affirmative evidence of innocence, I would consider Holt's argument under the ends of justice exception to Rule 5A:18. Therefore, I respectfully dissent as to that portion of the majority opinion.[7]

---

[6] I recognize that Holt's actions in obtaining a duplicate title from the DMV quite possibly constituted a criminal act. See Code §§ 46.2-105.1, 46.2-105.2 and 46.2-606. However, for reasons not apparent from the record, the Commonwealth did not elect to prosecute her for any offense other than embezzlement and larceny by false pretenses.

[7] I concur in Part II (A) of the majority opinion addressing the scope of *en banc* review.

- 12 -

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The ends of justice exception is narrow and is to be used sparingly," and applies only in the extraordinary situation where a miscarriage of justice has occurred. Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she *was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur*." Id. at 221-22, 487 S.E.2d at 273 (emphasis added). Thus, we must "determine whether the record contains *affirmative evidence of innocence or lack of a criminal offense*." Flanagan v. Commonwealth, 58 Va. App. 681, 695, 714 S.E.2d 212, 218 (2011) (emphasis added) (quoting Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005)). Overall, the application of Rule 5A:18 is "to promote, not hinder, the administration of justice." Jimenez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991).

Code § 18.2-178(A) provides, in pertinent part, that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." "To sustain a conviction of larceny by false pretenses, the Commonwealth must prove: (a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property." Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994) (*en banc*).

- 13 -

The evidence in this case affirmatively establishes that two elements of the offense did not exist: no fraud actually occurred and, even if it did, Holt did not make a false pretense to perpetrate the fraud. Thus, I believe Holt has met her burden of establishing that a miscarriage of justice has occurred and that our consideration of her appeal under the ends of justice exception is warranted.

Holt was indicted for obtaining Banks's money by allegedly falsely representing that she would deliver the Suburban to him when the final payment was made. The date of the offense in the amended indictment was March 2013 through July 29, 2013. The evidence, considered in the light most favorable to the Commonwealth, established that the sale agreement between Holt and Banks was made in March 2013 and that Banks completed payment on the Suburban in July 2013. Holt's mother testified on behalf of the Commonwealth that on several occasions she witnessed Banks making payments on the car.

Banks testified that in exchange for the $900 he paid, he had sole possession of the Suburban after July 29, 2013 and that Holt signed the title over to him on that day. Banks further testified that the title, which was introduced into evidence, was signed by Holt in his presence and stated the terms of the sale as $900. On July 29, 2013, Banks received both possession of and title to the Suburban. Thus Holt fulfilled her part of the agreement.[8]

Simply put, the Commonwealth provided no evidence that by means of a false representation Holt obtained $900 from Banks *without compensation*. See Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008). On the contrary, the evidence affirmatively established that Banks received the bargained for consideration in return for his $900. Whatever happened after that, the sale was completed as of July 29. Thus, the evidence

---

[8] In fact, the only reason Banks did not obtain a title in his name was his decision to keep the car insured under Holt's insurance policy.

affirmatively shows that no "fraud actually occurred," Wynne, 18 Va. App. at 460, 445 S.E.2d at 161, and the ends of justice exception to Rule 5A:18 is appropriate. The August 2013 actions of Holt's boyfriend in taking possession of the Suburban from Banks, coupled with Holt's attempt to reacquire title to the car, may have constituted a subsequent larceny of the Suburban. However, those actions do not establish that, five months earlier, Holt did not intend to do exactly what she actually did do; deliver to Banks possession of and title to the Suburban.

Further, even if I were to conclude to the contrary, the Commonwealth's evidence affirmatively established that Holt did not obtain the purchase money by use of a false pretense. A criminal false pretense has been defined as "the false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation." Parker, 275 Va. at 154, 654 S.E.2d at 582 (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)). "The false pretense must be a false representation of an existing fact or past event." Reid v. Commonwealth, 65 Va. App. 745, 753, 781 S.E.2d 373, 377 (2016) (quoting Watson v. Commonwealth, 4 Va. App. 450, 452, 358 S.E.2d 735, 736 (1987)). "False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property." Parker, 275 Va. at 154, 654 S.E.2d at 582 (quoting Hubbard, 201 Va. at 66, 109 S.E.2d at 104).

> [F]or one to be guilty of the crime of larceny by false pretense, he must make a false representation of an existing fact with knowledge of its falsity and, on that basis, obtain from another person money or other property which may be the subject of larceny, with the intent to defraud.

Lund v. Commonwealth, 217 Va. 688, 691, 232 S.E.2d 745, 748 (1977); see also Mosteller v. Commonwealth, 222 Va. 143, 147-48, 279 S.E.2d 380, 382 (1981) (reversing appellant's

- 15 -

conviction for false pretenses because the Commonwealth failed to show "that the misrepresentations to some degree induced the [victim] to pay money that it would not have paid absent the false pretenses").

The only false representation alleged by the Commonwealth was that Holt never intended to deliver the Suburban in the future. The Commonwealth specifically argued that "[the] false representation was that she [Holt] would give over the car to Mr. Banks *at the end of the transaction*." (Emphasis added). Even if one were to assume that Holt had no intention of delivering the Suburban to Banks as promised, that intent cannot be the basis for false pretense. The Supreme Court has recognized that even if the promise "induce[d] the party defrauded to part with his property" it is not a false pretense because it was a "mere promise[] or statement[] of intention with reference to future events." Parker, 275 Va. at 154, 654 S.E.2d at 582. Simply put, misrepresentation of an intention to do something in the future cannot be the predicate representation for false pretenses. However, that was exactly the sole "false pretense" that the Commonwealth argued it had established.[9]

---

[9] Recognizing that this future promise could not constitute a false pretense under our existing case law, the majority reasons that because Holt and the victim were engaged in a romantic relationship, she might have made other undisclosed false representations to the victim. This ignores the express statement of the Commonwealth's Attorney that the false representation was her promise to deliver the car once it was paid for. Thus, this is not a case where we are left to speculate as to whether the Commonwealth simply forgot to introduce evidence to establish the existence of a false pretense. Rather, this is a case where the Commonwealth simply misunderstood the legal definition of a false pretense.

Alternatively, in an attempt to obviate the Commonwealth's misunderstanding of the law, the majority also reasons that "the record in this case actually implies that Holt made a false representation of an existing fact [by misrepresenting] that the Suburban was actually for sale . . . ." *Supra* at 10. I fail to see to see how the record justifies such an inference when, as I have noted above, Holt actually delivered to Banks possession of and title to the Suburban. To ignore this fact and then draw an inference of Holt's unexpressed intent in May from the unforeseen events that occurred in August is, to me, an inference that we must reject because it "def[ies] logic and common sense." Fox Rest Assocs., L.P. v. Little, 282 Va. 277, 283, 717 S.E.2d 126, 131 (2011) (explaining that an inference is not reasonable and should be rejected if "it would

- 16 -

I believe application of the ends of justice is appropriate because the evidence established that Holt employed neither a fraud nor a false pretense, and she was consequently convicted for conduct that was not a criminal offense. See Redman, 25 Va. App. at 221, 487 S.E.2d at 272. "The non-offense prong of the ends of justice analysis is similar to a legal impossibility analysis." Masika v. Commonwealth, 63 Va. App. 330, 335, 757 S.E.2d 571, 573 (2014) ("Legal impossibility occurs when a defendant's actions would not constitute a crime, even if they were carried out fully and exactly as he intended."). Here, it is a legal impossibility to be guilty of larceny by false pretenses when the false representation made was one of future intent to complete the contract and the agreement was in fact completed as promised. Since the terms of the sale were $900 for possession of and title to the Suburban and that is the consideration Banks received, a larceny did not occur at all. Holt was convicted for conduct that was not a criminal offense. Here, "the evidence clearly and affirmatively shows that an element of one of the crimes of which [appellant] was convicted did not occur." Ali v. Commonwealth, 280 Va. 665, 671, 701 S.E.2d 64, 68 (2010).

"Accordingly, there was error in the judgment appealed from and application of the ends of justice exception is necessary to avoid a grave injustice." Id. I would reverse and dismiss the indictment.

---

defy logic and common sense" (quoting TB Venture, LLC v. Arlington County, 280 Va. 558, 562-63, 701 S.E.2d 791, 793 (2010))).

- 17 -

## *VIRGINIA:*

In the Court of Appeals of Virginia on **Tuesday** *the* **15th** *day of* **September, 2015**.

Angela Maye Holt,                                                                                            Appellant,

 against             Record No. 1252-14-1
                    Circuit Court Nos. CR13003659-00 and CR13003904-00

Commonwealth of Virginia,                                                                          Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On August 13, 2015 came the appellant, by court-appointed counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 4, 2015, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on August 4, 2015 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b).  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  An electronic version of each brief shall be filed with the Court and served on opposing counsel.  In addition, twelve printed copies of each brief shall be filed.  It is further ordered that the appellant shall file an electronic version and twelve additional copies of the appendix

previously filed in this case.[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

-2-

Present:   Judges Petty, Chafin and Decker
Argued at Norfolk, Virginia


ANGELA MAYE HOLT

                                              MEMORANDUM OPINION[*] BY
v.       Record No. 1252-14-1               JUDGE TERESA M. CHAFIN
                                               AUGUST 4, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

J. Barry McCracken, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


At the conclusion of a jury trial held in the Circuit Court of the City of Norfolk, Angela

Maye Holt ("Holt") was convicted of obtaining money by false pretenses in violation of Code

§ 18.2-178 and embezzlement in violation of Code § 18.2-111.  On appeal, she challenges the

sufficiency of the evidence supporting her convictions.  For the reasons that follow, we affirm

Holt's conviction of obtaining money by false pretenses.  However, we find that the evidence

presented at trial was insufficient to support her conviction of embezzlement, and accordingly,

we reverse that conviction.

I.  BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence established that Holt and

Anthony Banks ("Banks"), the victim in the present case, began dating in 2012 when Banks was

seventeen years old and Holt was twenty-nine years old.  Banks and Holt lived together at Holt's

mother's house.

In the spring of 2013, Banks agreed to purchase Holt's Chevrolet Suburban to help her

make child support payments.  Banks began making periodic payments to Holt for the purchase

of the vehicle in March 2013.  He made a payment to Holt each time he received a paycheck, and

Holt's mother observed Banks making some of these payments.  Often, Banks would give his

entire paycheck to Holt to cover the couple's living expenses as well as his vehicle payment.

Over the course of approximately five months, Banks paid Holt $900 for the Suburban,

and Holt signed the title of the vehicle over to him on July 29, 2013.  With Holt's permission,

Banks did not register the transaction with the Department of Motor Vehicles ("DMV") because

it was cheaper for him to keep the vehicle on Holt's automobile insurance policy rather than

transfer it to one of his own.  Although both parties occasionally drove the Suburban before July

29, 2013, Banks testified that he had physical possession of the vehicle after that date.

On July 16, 2013, Aaron Smalley ("Smalley"), Holt's former boyfriend and the father of

her children, was released from incarceration, and he and Holt quickly resumed their romantic

relationship.  When Smalley came to Holt's mother's house to pick up his children on August 2,

2013,[1] Smalley and Banks had an argument that eventually developed into a physical altercation.

As Smalley attempted to leave the house in another car owned by Holt, Banks took the keys of

the car to prevent Smalley from driving away with equipment and passes required for Banks's

---

[1] While Banks testified that the altercation occurred on August 3, 2013, he also testified
that the altercation occurred on a Friday evening.  Holt also testified that the altercation occurred
on a Friday.  As August 3, 2013, was a Saturday, the altercation likely occurred on August 2,
2013.

employment. Smalley then got into the Suburban and drove away. This altercation effectively ended the romantic relationship between Holt and Banks, and Holt and Smalley were married in December 2013.

Banks decided to record his title to the Suburban with the DMV as soon as possible in order to regain possession of the vehicle. As the altercation between Smalley and Banks occurred on a Friday evening, however, Banks waited until the following Monday to register his title. When he arrived at the DMV, he learned that Holt had obtained a replacement title to the vehicle on August 3, 2013, the day following the altercation, by claiming that the original title to the vehicle had been lost or stolen. Holt's replacement title rendered Banks's original title invalid, and neither the Suburban nor the $900 that Banks paid to Holt were ever returned to him.[2]

At her trial, Holt testified that she never sold the Suburban to Banks. She also claimed that he never paid her any money for the vehicle. Although Holt admitted that she signed the title of the Suburban on July 29, 2013, she explained that she only did so in anticipation of selling the vehicle to a third party. Holt testified that she stored the signed title in a bedside table and that she never signed the title of the Suburban over to Banks. Holt claimed that she obtained a replacement title to the Suburban because she feared the original title had been stolen when she could not locate it following the altercation between Smalley and Banks. The jury rejected Holt's testimony concerning the sale of the vehicle and convicted her of obtaining money by false pretenses and embezzlement, sentencing her to pay a $900 fine for each offense. Holt appealed her convictions to this Court.

---

[2] Banks briefly discussed buying another vehicle from Holt and allowing her to keep the Suburban, but these negotiations failed when Banks did not timely make the initial payment for the other vehicle.

II.  ANALYSIS

On appeal, Holt contends that the evidence presented at trial was insufficient to prove several elements of the offenses of which she was convicted.  Specifically, Holt argues that the evidence was insufficient to support her conviction of obtaining money by false pretenses because it failed to establish that she "acted with a fraudulent intent to deprive [Banks] of money or property."  She also claims that the evidence was insufficient to establish that she made a false representation to Banks of any "material past and present fact," and she requests that we review this issue under the "ends of justice" exception to Rule 5A:18.  Additionally, Holt contends that the evidence was insufficient to support her conviction of embezzlement because it failed to establish that she "converted property over which she had custody or control by virtue of a position of trust."

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it."  Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*).  Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).  It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319).  We do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ.  Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).  Furthermore, as previously stated, we review the evidence and all reasonable inferences derived

- 4 -

from it in the light most favorable to the Commonwealth, the prevailing party at trial. See, e.g., Archer, 26 Va. App. at 11, 492 S.E.2d at 831.

When we review the evidence under this deferential standard, we conclude that it was sufficient to support Holt's conviction of obtaining money by false pretenses. We agree with Holt, however, that the evidence was insufficient to prove that she fraudulently converted any property that had been entrusted to her, and therefore, we conclude that the evidence was insufficient to support her conviction of embezzlement.

A. THE EVIDENCE WAS SUFFICIENT TO SUPPORT HOLT'S CONVICTION OF OBTAINING MONEY BY FALSE PRETENSES

Code § 18.2-178(A) provides, in pertinent part, that "[i]f any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." To sustain a conviction for larceny by false pretenses,

> the Commonwealth must prove: "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)); see also Austin v. Commonwealth, 60 Va. App. 60, 66, 723 S.E.2d 633, 636 (2012).

1. INTENT TO DEFRAUD

A conviction of larceny by false pretenses requires proof that the accused intended to defraud the victim. Riegert, 218 Va. at 518, 237 S.E.2d at 807 (citing Bourgeois, 217 Va. at 272, 227 S.E.2d at 717). Additionally, the Commonwealth must prove that the accused's fraudulent intent existed at the same time that he or she used false pretenses to obtain property from the

- 5 -

victim.  See id.  To have an intent to defraud, the accused must intend "to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter, or terminate a right, obligation or power with reference to property.'"  Bray v. Commonwealth, 9 Va. App. 417, 422, 388 S.E.2d 837, 839 (1990) (quoting Black's Law Dictionary 381 (5th ed. 1979)).  "'Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances.  It is a state of mind which may be shown by a person's conduct or by his statements.'"  Austin, 60 Va. App. at 66, 723 S.E.2d at 636 (quoting Vincent v. Commonwealth, 276 Va. 648, 652-53, 668 S.E.2d 137, 140 (2008)).  "[W]hether the required intent exists is generally a question for the trier of fact."  Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

"Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof."  Austin, 60 Va. App. at 66, 723 S.E.2d at 636 (emphasis in original) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).  When the facts and circumstances of the present case are considered in the light most favorable to the Commonwealth, the evidence presented at trial was sufficient to establish that Holt intended to defraud Banks when she agreed to sell him the Suburban and accepted payments from him for the purchase of the vehicle.

When Holt and Banks began their romantic relationship, Holt was more than ten years older than Banks and Banks was a minor.  Banks financially supported Holt, and she eventually persuaded him to purchase the Suburban from her to help her pay child support.  When Smalley, Holt's former boyfriend and the father of her children, was released from incarceration, she quickly rekindled her romantic relationship with him and they were married within five months. Based on these circumstances, the jury could have reasonably inferred that Holt never intended to remain in a long-term romantic relationship with Banks and that their relationship was a

pretext on her part that allowed her to take advantage of Banks's relative youth and inexperience to obtain financial support from him.

Although Holt signed the title of the Suburban over to Banks on July 29, 2013, she knew that Banks did not plan to register the transaction concerning the Suburban with the DMV for insurance purposes. On August 2, 2013, however, a mere four days after Holt signed the title of the Suburban over to Banks, Smalley came to Holt's mother's house and drove away in the Suburban. Instead of persuading Smalley to return the Suburban to Banks, Holt went to the DMV the next day and obtained a replacement title to the Suburban by claiming that the original title was lost or stolen. By doing so, she invalidated the original title to the vehicle held by Banks, and she never returned the Suburban to Banks or refunded the money he paid to her for the vehicle.

Given these circumstances, the jury reasonably inferred that Holt never intended to sell the Suburban to Banks. She reclaimed both physical possession of and title to the Suburban within days of transferring ownership of the vehicle to him. The jury could have concluded that Holt lied to Banks when she told him that she would sell him the Suburban in order to induce him to make periodic payments to her to allegedly purchase the vehicle and that she never intended to actually sell the vehicle to him.[3] At a minimum, the jury could have inferred that Holt had no intention to transfer the Suburban to Banks when she accepted his final payment for

---

[3] While Holt testified that she never sold the Suburban to Banks, accepted payments from him for the vehicle, or signed the title of the vehicle over to him, the jury did not believe her testimony. "The credibility of the witnesses and the weight accorded the evidence are matters *solely* for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462, 675 S.E.2d 178, 181 (2009) (emphasis added). The jury was "at liberty to discount [Holt's] self-serving statements as little more than lying to conceal [her] guilt, and could treat such prevarications as affirmative evidence of guilt." Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (citation and internal quotation marks omitted).

the vehicle on or around July 29, 2013, because she reclaimed both possession of and title to the vehicle days later. Accordingly, we conclude that the evidence presented was sufficient to establish that Holt intended to defraud Banks when she agreed to sell him the Suburban and accepted payments from him for the purchase of that vehicle.

## 2. FALSE PRETENSES

The Commonwealth must prove that the defendant used "false pretenses for the purpose of perpetrating the fraud" in order to sustain a conviction under Code § 18.2-178. See Riegert, 218 Va. at 518, 237 S.E.2d at 807.

> A criminal false pretense has been defined as follows:
>
> "[T]he false representation of a past or existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does in fact deceive, and by means of which one person obtains value from another without compensation. According to the definition, the false pretense must be a representation as to an existing fact or past event. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property. But if false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property."

Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

Holt argues that the Commonwealth failed to prove that she made a false representation of an existing fact or past event that induced Banks to part with the $900 he paid for the Suburban. Holt contends that even if she falsely represented that she would sell the Suburban to Banks, such a representation constituted a promise or a reference to a future event, and therefore, was insufficient to support her conviction of larceny by false pretenses. While Holt did not

- 8 -

present this argument to the trial court, she requests that we consider this issue under the "ends of justice" exception to Rule 5A:18.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "'The ends of justice exception is narrow and is to be used sparingly,'" and applies only in the extraordinary situation where a miscarriage of justice has occurred. Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 289, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record *must affirmatively prove* that an element of the offense did not occur." Id. at 221-22, 487 S.E.2d at 273 (emphasis added).

"In order to invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." Id. at 221, 487 S.E.2d at 272 (emphasis in original). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (emphasis in original). "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Flanagan v. Commonwealth, 58 Va. App. 682, 695, 714 S.E.2d 212, 218 (2011) (quoting Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005)).

While the Commonwealth *may* have failed to prove a specific representation made by Holt referencing an existing fact or past event, the record does not affirmatively prove that Holt failed to make such a representation. In fact, the record implies that Holt made a false representation concerning an existing fact. She represented that the Suburban was actually for sale when she persuaded Banks to purchase the vehicle and make payments to her for that purpose. Although Holt promised that she would sell the Suburban to Banks in the future when he had completed all of his installment payments and paid her the full purchase price of the vehicle, Banks had to rely to some degree on Holt's representation that the Suburban was actually for sale at the time when he agreed to purchase it and made payments for the vehicle. See Parker, 275 Va. at 154, 654 S.E.2d at 582 ("'[I]f false representations are made, some of which refer to existing facts or past events, while others refer solely to future events, a conviction may be had if it is shown that any of the representations as to existing facts induced the complaining witness to part with his property.'" (quoting Hubbard, 201 Va. at 66, 109 S.E.2d at 104)).

At best, the Commonwealth's failure to present additional evidence concerning the specific false pretenses that Holt used to defraud Banks only demonstrates that a miscarriage of justice *may* have occurred, not that a miscarriage of justice *did* occur. See Redman, 25 Va. App. at 223, 487 S.E.2d at 273. As the record fails to affirmatively prove that Holt did not make a false representation of an existing fact or past event and implies that she actually made such a statement, we decline to apply the ends of justice exception to Rule 5A:18 to her argument concerning this issue, and therefore, do not consider her argument that the evidence was insufficient to prove that she used false pretenses to perpetrate the fraud at issue in this case.

B. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HOLT'S CONVICTION OF EMBEZZLEMENT

Code § 18.2-111 provides, in pertinent part, that "[i]f any person wrongfully and fraudulently use, dispose of, conceal or embezzle any . . . personal property, tangible or intangible, . . . which shall have been entrusted or delivered to him by another . . . he shall be guilty of embezzlement." To sustain a conviction under this statute, "the Commonwealth must prove that the accused 'wrongfully appropriated to [her] use or benefit, with the intent to deprive the owner thereof, the property *entrusted to [her]*.'" Brown v. Commonwealth, 56 Va. App. 178, 185-86, 692 S.E.2d 271, 275 (2010) (quoting Dove v. Commonwealth, 41 Va. App. 571, 577, 586 S.E.2d 890, 893 (2003)) (emphasis added). "[T]he Commonwealth must prove that the [accused] was entrusted with the property of another," and a "formal fiduciary relationship is not necessary" between the parties. Chiang v. Commonwealth, 6 Va. App. 13, 17, 365 S.E.2d 778, 780 (1988). "To entrust is '[t]o give (a person) the responsibility for something . . . after establishing a confidential relationship.'" Brown, 56 Va. App. at 186, 692 S.E.2d at 275 (quoting Black's Law Dictionary 574 (8th ed. 2004)).

In the present case, Holt contends that the evidence was insufficient to support her conviction of embezzlement because the Suburban was not entrusted to her care at the time that it was wrongfully appropriated. The Commonwealth, however, argues that Holt was entrusted with the Suburban when Banks did not record the change of its title with the DMV and that the vehicle remained entrusted to her when she obtained a replacement title that invalidated Banks's title and thereby deprived him of ownership of the vehicle. We agree with Holt's argument.

Banks obtained title to the Suburban on July 29, 2013, and he testified that he had primary physical possession of the vehicle after that date. Although he failed to record the change of title with the DMV, Banks did not intend for Holt to maintain an ownership interest in

- 11 -

the Suburban. Rather, he did not record the transaction for insurance purposes. No evidence in the record indicated that Banks believed that Holt still owned the Suburban after she signed the title of the vehicle over to him, even though the title was still officially recorded in her name. For all practical purposes, Banks owned the Suburban when Smalley took it on August 2, 2013,[4] and the vehicle was no longer in Holt's physical custody or control on that date and was not entrusted to her care in any way.

Similarly, the Suburban was not in Holt's custody or control when she obtained the replacement title to it on August 4, 2013. While Holt was still the registered title holder of the vehicle, her status as such did not establish that the vehicle was in any way entrusted to her care. Banks had not allowed her to use the vehicle at that time or otherwise made her responsible for it. Although she had the ability to deprive Banks of ownership of the Suburban by obtaining a replacement title, she could only do so by fraudulently representing that she was still the owner of the vehicle and that its original title had been lost or stolen. The Suburban was only officially registered in Holt's name for insurance reasons, and the vehicle was not entrusted to her for any purpose.

As the Suburban was not entrusted to Holt at the time that it was wrongfully appropriated, we conclude that the evidence presented at trial was insufficient to support Holt's conviction of embezzlement.

---

[4] Typically, "'[t]he owner of an automobile is the party who has legal title to it.'" Bolden v. Commonwealth, 28 Va. App. 488, 492, 507 S.E.2d 84, 86 (1998) (quoting Hall, Inc. v. Empire Fire & Marine Ins. Co., 248 Va. 307, 309, 448 S.E.2d 633, 635 (1994)). In certain circumstances, however, other documentation of a sale can effectively provide sufficient indicia of ownership of an automobile in the absence of legal title. See Shropshire v. Commonwealth, 40 Va. App. 34, 40, 577 S.E.2d 521, 524 (2003) ("title might be sufficiently proven by a conditional sale contract, promissory note and security agreement or similar evidence"). In this case, Banks's title to the Suburban established that he was the owner of the vehicle even though the title was still officially recorded in Holt's name.

## III. CONCLUSION

In summary, we conclude that the evidence presented was sufficient to support Holt's conviction of obtaining money by false pretenses. Holt's fraudulent intent could be inferred from the totality of the circumstances of the case, and no affirmative evidence in the record established that she did not falsely represent a present fact or past event that induced Banks to pay her for the Suburban. Additionally, we conclude that the evidence presented was insufficient to support Holt's conviction of embezzlement because it failed to prove that the Suburban was entrusted to her at the time that it was wrongly appropriated. Accordingly, we affirm Holt's conviction of obtaining money by false pretenses and reverse her conviction of embezzlement.

Affirmed in part, and
reversed in part.

Petty, J., concurring, in part, and dissenting, in part.

I agree with the majority that the evidence was insufficient to support Holt's conviction of embezzlement and concur with the reversal of that conviction. I would further conclude, however, that the evidence was also insufficient to support Holt's conviction of larceny by false pretenses. Although I recognize that Holt did not explicitly mention the false pretense element of the offense in her motion to strike, I would apply the "ends of justice" exception to Rule 5A:18 and reverse that conviction also. Accordingly, I respectfully dissent.

As the majority notes, one of the elements of the crime of larceny by criminal false pretense is the use of a false pretense for the purpose of perpetrating the fraud. "Moreover, the false pretense must be a representation as to an existing fact or a past event." Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976). "'False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within the statute, even though they induce the party defrauded to part with his property.'" Parker v. Commonwealth, 275 Va. 150, 154, 654 S.E.2d 580, 582 (2008) (quoting Hubbard v. Commonwealth, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959)).

The majority acknowledges that the Commonwealth failed to prove a specific representation by Holt of an existing fact or past event. The Commonwealth specifically argued that "[the] false representation was that she would give over the car to Mr. Banks at the end of the transaction." This was a "mere promise[] or statement[] of intention [with] reference to future events" and cannot be the basis for false pretenses even if the statement "induce[d] the party defrauded to part with his property." See Parker, 275 Va. at 154, 654 S.E.2d at 582. The majority suggests that Banks relied on Holt's representation that the Suburban was for sale and that she would give it to him when he paid the money. But this is merely another way of saying Holt induced Banks to part with his money by a promise or statement of intention with reference

- 14 -

to future events. It does not qualify as a representation of an existing fact or past event. I note also that to the extent Banks relied on this promise, his reliance was well placed. Banks himself testified that he had possession of the Suburban after July 29, 2013 and that the title was signed over to him on that day. Thus, whatever else happened after that, the sale was completed.

Simply put, misrepresentation of an intention to do something in the future cannot be the predicate representation for false pretenses. However, that was exactly what the Commonwealth argued was the false pretense it established. As a result, Holt was convicted for conduct that was not a crime. "Accordingly, there was error in the judgment appealed from and application of the ends of justice exception is necessary to avoid a grave injustice." Ali v. Commonwealth, 280 Va. 665, 671, 701 S.E.2d 64, 68 (2010). I would apply the ends of justice exception to address Holt's argument that no criminal false representation was made. Because the record supports her position, I would reverse her conviction.

The majority, however, denies the "ends of justice" exception on the basis that Holt did not affirmatively prove that an element of the offense did not occur. The majority correctly states that to invoke the ends of justice exception, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 289, 272 (1997). Further, we must "determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Flanagan v. Commonwealth, 58 Va. App. 682, 695, 714 S.E.2d 212, 218 (2011).

Holt was convicted for conduct that was not a criminal offense because she made no false representation of a present fact or past event. Further, the record contains affirmative evidence that no such false representation occurred. Holt, Holt's mother, and Banks all testified about the exchange of money for the Suburban. After all of the testimony, the only statement the

Commonwealth pointed to as a false representation was Holt's intent to not deliver the Suburban in the future. "The non-offense prong of the ends of justice analysis is similar to a legal impossibility analysis." Masika v. Commonwealth, 63 Va. App. 330, 335, 757 S.E.2d 571, 573 (2014) ("Legal impossibility occurs when a defendant's actions would not constitute a crime, even if they were carried out fully and exactly as he intended."). Here, it is a legal impossibility to be guilty of larceny by false pretenses when the false representation made was one of future intent to complete the contract, rather than one of existing fact or past event.

In a strange twist, the majority would place on Holt the impossible burden of affirmatively proving a negative—that she did not make a false representation. Rather, I believe our precedent requires us to determine from the record that the element was affirmatively addressed and the evidence supporting the element was insufficient. Here, "the evidence clearly and affirmatively shows that an element of one of the crimes of which [appellant] was convicted did not occur." Ali, 280 Va. at 671, 701 S.E.2d at 68. Consequently, I would have reviewed the appeal under the "ends of justice" exception to Rule 5A:18 and reversed Holt's conviction for larceny by false pretenses.